versus 1-16-3294. The following order and procedures will be followed. First, the appellant will present their case with no interruptions, and then the justices will ask their questions. Following that, the appellee will present their case, and then the justices will ask their questions. The appellant then will follow for three to five minutes with their closing. Oh, and the actual arguments are 10-12-14 minutes. With that, the two of you should introduce yourself, and we'll go from there. Good morning, Your Honors. My name is Adrienne Sloan with the Office of the State Appellate Defender, and I'm here for Diego Penaloza. Good morning, Your Honors. I'm Assistant States Attorney Sarah McGann on behalf of the people. Okay, you may begin. Good morning, Your Honors. May it please the Court. My name, again, is Adrienne Sloan with the Office of the State Appellate Defender on behalf of Mr. Diego Penaloza. I'd like to focus today on Issue 1 in my brief, which is the sufficiency argument on the aggravated discharge of a firearm conviction, but of course I'm happy to answer questions on any of my four issues. Diego Penaloza was convicted of aggravated discharge of a firearm based on an accountability theory, even though the trial evidence only showed that Diego was a passenger in a car when Jose Penaloza made the independent decision to discharge his weapon in the direction of police officers. In this case, there's no showing at trial that Diego did anything to facilitate the commission of this offense. There's no shared criminal intent between Diego and Jose Penaloza, and there's no common criminal design that they both entered into. The evidence only establishes that Diego was merely present in the car when Jose chose to shoot at the officers, and mere presence is not enough for an accountability conviction. For these reasons, we're asking that Diego's discharge of a firearm be reversed. First of all, Diego's conviction cannot be upheld under the shared criminal intent theory. For a shared criminal intent conviction, the state would have had to prove that Diego affirmatively acted in furtherance of Jose's shooting at the officers, that he aided, abetted, or encouraged it. Here, there's no evidence that Diego committed any act in furtherance of the Taylor, the Illinois Supreme Court reversed a defendant's conviction under very similar circumstances. In this case, the defendant was driving a car, knew that the principal had a gun, and stopped so that the principal could get out and shoot his gun, but the Supreme Court still held that under the shared criminal intent theory, the defendant's conviction could not be upheld because there's no showing that he had he shared the principal's actual intent to shoot at the V. Taylor, as Diego was not the driver, and there's no affirmative evidence that he even knew that Diego, that Jose, excuse me, had a gun. And again, under Taylor, even if Diego did know that Jose had a gun, that's not enough under shared criminal intent. Diego would have had to actually facilitate the crime for his guilt to attach. Again, be as Diego did not intend for the officers to be shot by Jose, there could be no conviction under the shared criminal intent theory. Similarly, Diego's conviction should be reversed under the common criminal design rule. The common criminal design rule differs from shared criminal intent because it doesn't require that Diego necessarily specifically shared Jose's intent to shoot at the officers, but it still requires a showing that Jose and Diego entered into a common criminal plan or scheme, and that there's no evidence of such a plan here, so Diego's not guilty under common criminal design. Another case very similar to this one is People v. Estrada, where the defendant and the principal offender were in a car and began shouting at the victim as part of a gang-related altercation. The defendant then got out of the car in order to intimidate the victim with a tire iron, and the principal offender, who was still inside the car, shot at the victim. The court in this case held that the defendant could not be accountable for the principal's shooting because there was no direct evidence tying the defendant to a common plan or design to shoot at the victim. The same is true here. Diego is merely present in the car when Jose made the independent decision to shoot at the officers, and there's no showing that he did so in furtherance of a plan he had with Diego. The state asserts in its briefs that there was some common plan to akin to People v. Fernandez, where two defendants agreed to jointly perpetrate a burglary, and an officer was shot in the process. But here, there was no joint agreement to participate in any underlying crime. Whatever happened between Diego and Sterling Edwards, there's no showing that Jose was involved in any way. In fact, evidence about Sterling Edwards was not even a part of Jose prior to Jose's shooting at the officers. Edwards simply testified that Diego and Marco Penaloza got out of a car, and Diego showed Edwards an object that Edwards assumed was a gun. Again, Edwards made no allegation that Jose participated in this intimidation whatsoever. There's no showing that Edwards even knew that Jose may have been in the car at the time this was not credible. Edwards was a gang member and a felon and only could view this incident from 15 to 20 feet away in the dark through his rearview mirror. Furthermore, one thing I really want to emphasize is that there is no showing that the object or gun that Diego showed to Sterling Edwards was in any way the same gun that Jose later used to shoot at the officers. In fact, there's actually evidence of the contrary. Again, Sterling Edwards only described Diego's gun as a black object that he assumed was a gun. Jose's gun, on the other hand, was the officers whom he shot at testified it at great length about its unique attributes, calling it a huge, extremely distinctive assault rifle. In fact, one of the officers stated that the only time he had ever seen a gun like that before is when he was deployed in a foreign military. The officers also identified a photo of Jose's distinctive, unique assault rifle as an exhibit at trial. Sterling Edwards was never shown that exhibit and never identified the supposed gun that Diego was holding. Jose Penaloza made the independent decision to shoot at police officers and there is no showing that it was done in furtherance of a common plan with Diego. Taking all reasonable inferences in favor of this state, first you have Diego and Marco Penaloza taunting Sterling Edwards with this object Edwards assumed was a gun and later you have Jose Penaloza making the decision to shoot at the officers. It's two separate incidents involving two separate sets of parties. This does not show an agreement or a shared criminal scheme. Again, in sum, Diego was merely present in the car when his brother Jose decided to shoot at police officers. There's no showing of a shared criminal intent or that the that Diego and Marco and excuse me Diego and Jose entered into a common criminal design and for this reason we're asking that Diego's conviction for aggravated discharge of a firearm be reversed. Thank you. Are there any questions? I have a question. Yes. Isn't the defendant responsible for the acts of the group if you believe that the four occupants of the vehicle were acting together? Well I think that in that you have to have affirmative evidence that the four occupants of the vehicle were acting together and normally for a conviction like this there's an actual underlying crime that all the participants are agreeing to participate in that then leads to the final crime. Here again Jose and Diego never entered into an agreement to participate in an underlying crime. That's why this differs from a lot of the other cases with a common criminal design conviction like for example in Fernandez the defendant actually conceded to planning and participating in a burglary with the such an agreement between both Diego and Jose. Go ahead Joe. No go ahead. Isn't being in the car, staying in the car, flashing gang signs behaving badly an indication that they intended to stick together through all of through this evening? Well mere presence in the car is not enough for an accountability conviction and that's especially true in this case where Diego was not the driver. Again in cases like Estrada the defendant even is the driver and he's still not convicted for accountability because there's no showing that they they both intended to enter into a common criminal design to commit a crime that and then that the shooting was done in furtherance of that crime. They were both flashing gang signs though. Well there's there's no evidence at trial that Diego's trial that Jose was flashing gang signs. That was Diego according to Sterling Edwards who again was the only witness to the Edwards altercation. Diego and Marco Penaloza got out of their car and flashed gang signs. Well subsequent to the shooting they still remained together and he continued to be with them. How do you overcome that? Well the the offenders were almost immediately apprehended subsequent to the shooting. So the shooting occurred and then the offenders were pulled over by the officers and again for an accountability conviction flight from the scene or even continued association with the principal is not enough. There has to be affirmative evidence that the defendants were acting together during or before the crime that they had made a plan to participate in and carried out a crime together. I have a question wasn't the gang activity and the gang signs and the driving around the car and the bashing into the poor unsuspecting person in the other car and continuing on while Diego's driving and isn't that some evidence that they were all acting as part of a group? Well Diego Diego's not driving. Marco Penaloza's the driver and again the gang sign evidence has nothing to do with Jose Penaloza. No one no one testified that Jose was participating in the gang sign evidence and no one testified that Diego. He's part of the group of people in the car you don't deny that do you? No I don't deny that they were all in the car but my our position is that simply the four of them being in the car is not enough. You have to have affirmative evidence that that Diego and Jose entered into a common criminal plan or scheme and that Jose was perpetrating the shooting actually in furtherance of this plan that he had. So here you really what you have is two separate incidents. The incident with Sterling Edwards had to do with Diego and Marco Penaloza. They get back in the car driving away they get into some sort of traffic crash and then what you have is Jose making the independent decision to shoot at the officers without us showing that they actually that Jose and Diego entered into a plan there can be no conviction under common criminal design. You believe there had to be a specific plan in the car in order for there to be accountability? Yes there needs to be a plan that Diego and Jose both entered into jointly and I don't believe that we have that here. I have nothing further. Okay thank you. You know what your honor I can't hear you. State you can proceed now. Thank you your honor may please the court. Your honors this is a classic textbook case of common criminal design. Here we have defendant who actually initiated that initial act which contrary to counsel's argument was when defendant decided to get out of that car that he was driving around with his cohorts, his brothers and his other buddy. Get out of that car, wave a gun at an innocent passer by Mr. Sterling Edwards, point it at him and chase Mr. Edwards car. This is not simply mere presence which is not required nor is active participation. This is a defendant though who really is is certainly not passive. He is a passenger in this car who ignites that first initial act and it's clear based on the evidence that all of the defendants were in on this initial act and that's the agreement to that act and that's that's what common criminal design is and in People v. Fernandez the Supreme Court reiterated its decision in the 1974 case of People v. Kessler reiterating that you know these two theories shared intent and the common criminal design which can support accountability really had been muddled and conflated over time. So it's important to note that shared intent in those cases the analysis is did the defendant share the intent to commit the charged offense whereas in criminal common design you just need to share or show some participation in any offense. Here we have what really is an aggravated assault against Mr. Sterling Edwards when defendant himself points the gun at Mr. Edwards and gets back into the car and then thereafter defendant is criminally liable for all of the acts in furtherance especially the aggravated discharge of a firearm when just moments later following the hit and run accident police then give chase and co-defendant Jose Penaloza the reasonable inference here is takes that same gun and points it at officers shoots at officers and throws the gun down. It's a seamless interaction here where then that gun is recovered there's no evidence of another gun in that car but really that's not it's unimportant with these facts. Defendant would have this court really analyze this under shared intent. I would ask that the court sort of analyze this under common criminal design because it again is a textbook example. Counsel points to cases People v. Estrada, People v. Taylor. One People v. Taylor is a shared intent analysis. That's a classic sort of case where it's a spontaneous event. In that case we have a defendant who's driving with another defendant and he didn't know that they would get in a car accident and the co-defendant who's the principal would then shoot the firearm. This is not a spontaneous event, spontaneous shooting. We have that initial act where they are essentially not only intimidating with just gang signs like in People v. Estrada which counsel relies on. This is not mere gang signs from the car. This is gang signs and then the car stopping and defendant getting out of the car with the driver and we have no evidence that at that point Jose tries to flee or tries to call police to say hey my brother is pointing a gun at another driver. No instead they all stay in the car and then travel on to pursue Mr. Edwards to taunt him even further and they're only stopped when they get in this hit and run car accident and the police then give chase. So I would certainly distinguish this from People v. Taylor and People v. Estrada has also really been made questionable where we have the Supreme Court here who spoke in People v. Fernandez and really reiterated what common criminal design is and really you know emphasize that these are two distinct ways to show and support accountability how you can promote or facilitate a crime. So I would ask this court to focus on the common criminal design and if I may here counsel really emphasizes that there was no joint agreement here for the shooting and again I think counsel is doing a shared intent analysis and avoiding this entire encounter that happened prior. Certainly under shared intent perhaps it could be perceived that way but we have more evidence of a common criminal design compelling evidence and with regards to you know a single eyewitness who is credible and the evidence of a single eyewitness is sufficient and this was very much a credible witness. Sterling Edwards was driving around with his uncle when unbeknownst to him defendant's car with his brothers and friends they just start taunting him. We have a eyewitness here who not only just flees from defendant but then is still in the area and sees police on the scene where actually stopped just moments later he seeks out police to tell them what had just happened that initial act and he identifies defendant on the scene there. At trial we have Mr. Edwards testify unequivocally that it was defendant who brandished a large black weapon and on cross-examination he reiterated that he thought it was a firearm. The reasonable inference is that was the same firearm that went back into the car which Jose used. It would be irrelevant if it was a different firearm I just want to point that out but it reasonably is this shared firearm that they were all using in that car. Mr. Edwards unequivocally identified defendant at trial as well as the person that waved and aimed that firearm at him. He saw him through his rear window and was terrified and tried to plead the scene there only to have defendant in his cohorts chase him. So Mr. Edwards was certainly a credible witness and as the trial court who's the trier fact here pointed out he found him to be credible and his testimony to be probative of the events that transpired here. So I would just ask this court to really distinguish that initial act from the shooting in the sense that all acts thereafter defendant was criminally liable for and anything further closing no I would just ask if there are any questions I was just perusing my testimony that Diego and Marco got out of the car and then got back into the car together yeah so at any point in time Diego could have said I'm out of here and gone gone away he got back into the car yes and that's uncontroverted testimony is that correct that is that is uncontroverted where we have Mr. Edwards who identified him as getting back in the car and then this seamless transaction where we have the testimony of Jose Santiago who is the you know innocent driver who's hit in that intersection who identifies the car and then just shortly thereafter moments later we have officers Theodorides and Yee stop this car and four occupants are removed and thereafter we have defendant identified as the person and Diego and Marco were the ones that were chasing the witness right yes your honor that's the testimony of Mr. Edwards so they each knew the other was chasing the witness I think that would be a reasonable inference I think the testimony was that Diego defendant gave chase to Mr. Edwards car and then he and Marco got back into the car Marco being the driver all right so even when they were chasing after the witness Diego could have said I'm out of here I'll see you around I'm leaving but he didn't certainly no correct that he instead stayed in that vehicle and it's clear that they he and his co-defendants were really all in this together and not just one isolated incident after another but as a series you can see that they were working together on this yes your honor that would be the state's position that they were working in concert on that initial act and then the aggravated discharge is is you know one of those acts that is in furtherance of that initial act for which defendant is criminally liable for you've not talked about the aggravated unlawful use of a weapon I can certainly address that again with the compelling evidence of Mr. Edwards who identified defendant both on the scene and at trial is the person who brandished that firearm and pointed at him that coupled with the fact that defendant was not on his own land or in his abode and did not have a valid firearm owner's void card the evidence was compelling he he he was found guilty beyond a reasonable doubt I know that counsel didn't touch on the void issue but there was no objection to that issue and certainly that was valid trial strategy by defendant's counsel who where there's no evidence that defendant had a valid void was really you know honing in on a theory of innocence and mistaken identity so it was really valid trial strategy to not object to that as we've seen in other cases people do tax any further questions I have a question miss McGann if if if if there is not if we were to conclude that there's not sufficient evidence that the defendant actually possessed the weapon that was recovered at the scene how if at all does that affect the aggravated discharge charge I think it does not affect it whatsoever I think we still have the credible evidence of a single eyewitness Mr. Edwards who identified defendant with a handgun whether or not it's the handgun that's been recovered is really unimportant we have you there's no handgun ever recovered so I think that is is not relevant here in fact I think the reasonable inference is that this was a shared handgun especially since we have you know the seamless timing of events here thank you thank you anything further okay Adriana you may I just have a couple of points first of all I do want to note that people via strata is still good law and has not been overruled or even discussed by Fernandez there are also cases which have discussed people via strata even after people via Fernandez came out people via strata does but does use a common criminal design analysis and under that analysis finds that the defendant is not accountable and the facts are really indistinguishable from this again the defendant and the principal were in the car together just like just like what happened in this case the defendant got out of the car just like what happened in this case the principal remained in the car and perpetrated a shooting even so the court undergoing a common criminal design analysis held that the defendant wasn't accountable for the shooting because there was no direct evidence tying to him to a plan or design to shoot the victim I also want to point out that it's definitely not a reasonable inference in this case that the same firearm was used or that even that Diego actually had a firearm where all Edwards testified to is that it was a black object that he assumed was a firearm the state repeatedly states in its briefs that the Diego and Jose were utilizing a shared assault weapon to show evidence of a common criminal scheme so certainly without evidence that that's actually true that the gun that Diego used was in any way the same as what Jose used that goes against common criminal design I don't believe that this is a textbook case of common criminal design I think a textbook case is where you have an undisputed underlying crime that's agreed upon or participated in by both both offenders so that's what happened in Fernandez the defendant actually conceded yes I was participating in a burglary with the principal offender and that burglary led to a shooting another example of this would be in People v. Fleming where several eyewitnesses testified of seeing the two offenders the principal and the defendant who was accountable participating in a robbery together here you don't have a plan with Jose and Diego Penaloza you don't have Jose and Diego perpetrating a crime together even if you all you need is an agreement to between the two offenders to simply participate in any offense you don't have affirmative evidence of this year without evidence of agreement between Diego and Jose simply staying in the car for Jose to independently do the choice make the choice to shoot at the officers is not enough and again we are arguing that Diego's conviction should be reversed under both the shared criminal intent theory or the the theory of common criminal design that's all I have thank you thank you any questions no all right thank you both you both did a very nice job under these unusual circumstances you both made very nice arguments and the briefs are well done we'll let you know in a week or two the outcome of the case thank you very much